## THE STAMFORD.[1]

## THE TWILIGHT.

## THE STAMFORD AND THE TWILIGHT.

*(District Court, D. Massachusetts. March 18, 1886.)*

1. COLLISION—FOG—VIOLATION OF TWENTY-FIRST RULE—NEGLIGENCE IN NOT HEARING STEAM WHISTLE—INJURIES TO PASSENGERS.

   The steamers S. and T. came into collision in the harbor of Boston in daylight, and during an unusually thick fog. Both vessels, at the time of the collision and previously, were running at as slow a rate of speed as their engines would admit of. Prior to the disaster they had been approaching each other from almost directly ahead. The S. heard the whistle of the T. when the latter was about one-half a point on her port bow. After a short interval it was heard a second time, and almost immediately afterwards a third. Each succeeding whistle seemed to be nearer, and the sound of paddle-wheels followed the third whistle. On hearing the first whistle the S. did nothing: on the second her helm was put a-port; and at the third hard a-port. *Held,* that the twenty-first rule required that the S. should not only slacken her speed, but also, under the circumstances, stop and reverse. *Held,* that the T. was also in fault in not hearing the whistle of the S., and also in proceeding ahead under the circumstances.

2. SAME—RIGHT OF INJURED PASSENGER TO DECREE.

   *Held, also,* that a passenger on board of the S., who, while exercising due care, had been injured by the collision, was entitled to a decree against both vessels.

The first two of these cases were cross-libels for a collision between the steamers Stamford and Twilight. The third was a libel by Catherine E. Frederickson, a passenger on the Twilight, against the Stamford and Twilight jointly, for personal injuries received in the same collision. It was admitted at the hearing, on the part of both vessels, that the libelant in the third suit was in the exercise of due care, and was entitled to a decree in her favor for her full damages if the court should be of opinion that the accident was caused by the fault of the vessels.

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

*Frederick Dodge* and *Edward S. Dodge*, for the Stamford.
*L. S. Dabney* and *E. N. Hill*, for the Twilight.
*W. A. Munroe*, for Catherine E. Frederickson.

NELSON, J.  This collision between the steamers Stamford and
Twilight occurred in Boston harbor, in an unusually thick fog, at
half past 5 o'clock of the afternoon of August 19, 1884.  The fog
had prevailed during the whole day over all the harbor below Gov-
ernor's island, and for some distance into the bay, making the navi-
gation extremely difficult and dangerous.  The Stamford was a pas-
senger boat running regular daily trips between Boston and Plymouth.
She left her wharf in Boston at 10·A. M., with some 300 passengers
on board, and arrived off Plymouth harbor; but, finding it unsafe to
attempt to enter on account of the fog, she turned about, and at the
time of the accident was on her way back to Boston.  She was run-
ning up the channel at half speed, sounding her whistle at frequent
intervals, and had arrived nearly opposite No. 6 buoy, on the Lower
Middle shoal, when her master heard a whistle which seemed to come
from about half a point on her port bow.  After a short interval he
heard the whistle repeated from the same direction, nearer, and im-
mediately after that a third whistle, and the sound of paddle-wheels
in the water, still nearer.  At the first whistle he did nothing.  At
the second, he ordered the wheel to be put to port, and on hearing
the third whistle, and sound of paddle-wheels, he ordered it to be put
hard a-port, the whole effect of the two orders being to change the
course of the boat to starboard two points.  When the approaching
vessel, which proved to be the Twilight, came in sight through the
fog, it was apparent that a collision could not be avoided, and, with
a view to ease the blow by lessening the angle of contact, he ordered
the wheel to be put hard to starboard.

The Twilight was also a passenger boat, plying regularly several
times a day between Boston and Nantasket.  She left her wharf in
Boston at 5 P. M., in clear weather, with a large number of passen-
gers on board, and proceeded down the harbor for Nantasket at full
speed.  At the Upper Middle shoal she struck the fog, and was then
slowed down to one bell.  At buoy No. 9 she was run into by the
steamer John Brooks, and by this collision a deep gash was cut in
her guard on the port side, at the forward gangway.  After extricat-
ing herself from the John Brooks, she again started up at full speed.
After this her engines were stopped twice; the first time to haul in
a hawser which had dropped overboard in her encounter with the
John Brooks, and the second time because her master began to have
doubts whether it would be safe to continue on in the fog.  He con-
cluded, finally, however, to go on, and the engines were again started.
Before she had attained full half speed the Stamford was seen and
reported on the port bow.  The Twilight's engines were stopped
and her wheel put hard to port as quickly as possible, but the col-

lision was then inevitable. The fog whistle of the Twilight was sounded regularly from the time she entered the fog. Her master and pilot were in the pilot-house, and the mate was forward on the look out; but none of them heard the Stamford's whistle, or any other sound of her approach before she came in sight. The Twilight struck the Stamford a little aft of her forward gangway, carrying away the whole port side of the latter outside of her hull, including the paddle-box and paddle-wheel. The Twilight also sustained considerable injury, but less than the Stamford.

A large part of the testimony on each side was directed to prove that immediately before the collision the opposing boat was running at full speed. But I am satisfied this was not the case as to either boat. Each boat was running with the steam close shut off, and was going at as slow a rate as her engine would admit of without coming to a full stop. This appears from the testimony of the engineers and other officers on the respective boats, and is confirmed by other witnesses on each side, as well as by all the surrounding circumstances. To run at full speed in such a fog, in a narrow and crowded channel, with the boats loaded with passengers, would be navigation of the most reckless kind. I do not believe the management of either of these boats was of this character. It is true, the tide was with the Stamford; but with her slow progress through the water, she could have made no allowance for that without stopping or drifting, which she was not bound to do. Nor should fault be attributed to her for starboarding. It had the effect to throw round her stern, and bring her course more nearly parallel with that of the Twilight, and thus to lessen the direct force of the blow, and it was done with the honest purpose of escaping greater disaster.

But upon other grounds I am of opinion that both vessels should be held responsible for the collision. By the twenty-first rule, then in force, a steam vessel, when approaching another vessel so as to involve risk of collision, was required to slacken her speed, and, if necessary, stop and reverse. The Stamford was in such a situation, in respect to the Twilight, that this rule was applicable to her. Perhaps she was not bound to stop at the first whistle; but at the second it was plainly her duty to stop and reverse. The successive whistles clearly indicated that a steamer was nearing her rapidly from almost directly ahead, and that the risk of collision was imminent. Her master had only his sense of hearing to inform him of the dangers in his path. Instead of heeding the warning and stopping his boat, which, as a prudent officer, he should have done, he contented himself with merely porting. This was a plain violation of the rule, and was one cause of the disaster.

The officers of the Twilight were at fault for not hearing the Stamford's whistle. It was heard by at least three of the passengers. The sea was smooth, and what little wind there was, was blowing from the direction of the Stamford. An attempt was made on the

part of the Twilight to prove that the Stamford's whistle was of insufficient power. But I think this failed. Their failure to hear it was undoubtedly owing to the disorder and confusion on board, caused by the collision with the John Brooks, and the efforts to recover the hawser. The Twilight had no right to proceed until order was restored, and the officers had regained their coolness and self-possession. For this reason I hold her also at fault.

In the first two cases interlocutory decrees are to be entered for the libelants, the damages to be divided. In the third case an interlocutory decree is to be entered for the libelant against both vessels. Ordered accordingly.